Okay, our next case is 2000. That Mr Grace's invention was obvious to one of ordinary skill in the art. They based this rejection upon a combination primarily of a reference to fueling and a reference to more. Mr Fueling had a mower that used a cutting line and he fed additional cutting line without having to bump the head onto the ground using a foot pedal that would cause relative movement between a spool and a spool housing. Mr Moore had a trimmer that had a lever on the handle that pulled a cable and this operated a forked lever that would push down on a gear and this gear would selectively engage gears that were on the inside of a hub of a spool. So your main argument is that fueling is not analogous art because we're talking about wheeled mowers? I prefer to leave the question of whether it's analogous art or not to the side because I think that that is a verbal question. It's a question of words more than anything else. Our argument is simply one that as a matter of fact, the fueling reference shows a different kind of lever. It shows a second class lever. It's one that where the effort is applied at the foot pedal, there is a fulcrum and the load is in between. This is what is used to raise and lower the housing in the middle of the lever. Whereas in Mr Grace's invention, that kind of lever, it would not be possible to move that lever from the fueling device over to a handheld line trimmer. You simply couldn't mount a second class lever onto a... But counsel, we've held and I think consistently that you don't have to be able to actually extract the element from the prior art and plop it into the invention and have it sort of work perfectly in this environment. But rather it's looking at the prior art that's cited to determine whether there's a motivation for someone to combine. Not that they can actually take one piece from this and put it with this and have it work perfectly. But would one of skill in the art know how to do that to make it work when you combine those things? That's correct. And what the board said was that they found the motivation to combine because both fueling and more did the same thing. That is, they fed additional line without bumping the head on the ground and they were addressing the same problem. Namely, advancing additional cutting line without bumping the head on the ground. That, of course, is exactly what the Supreme Court in KSR said is not sufficient to find a motivation to combine. I mean, that's why they reversed this panel because this panel said we got two patents in the prior art and the patents in the prior art were addressing the same problem. That is, the two prior art patents concern the same problem. And what the Supreme Court said is that's not the issue. The issue is whether one looking at the problem that the inventor, the present inventor, was dealing with whether one of ordinary skill in the art would be motivated to combine those references. And I think in doing so, one of ordinary skill in the art would look at the totality of circumstances. And that's what the Supreme Court was essentially saying in KSR. They were saying that you have to, under Graham versus John Deere, look at all factors when you consider a motivation to combine references. What's the error that the PTO made here? Is it a legal error or a factual error? I think it's a legal error, Your Honor, because... What is the legal error? What they've done essentially is they've relied upon basically abstract legal principles in determining that there was a motivation to combine references without pointing to specific facts that would lead one of ordinary skill in the art to combine references. They haven't pointed to any particular facts that would show, for example, that a lever, a second class lever, is a substitute for a mechanical gear, a gear that would... Isn't using one kind of lever rather than another something that's within the knowledge of someone skilled in the art? I mean, it's a fairly common thing to use one kind of lever or another, right? Well, but there are differences in the factual situations in which the levers are used. In the one case, in the fueling case, you have a mower, the lever was under a deck, and so you could use a second class lever there. In the Moore case, it's mounted on a pole. You couldn't directly transfer it. Figuring out how to transfer it, and Moore, by the way, did not move the housing relative to the spool. That he didn't do. What he did was he simply moved the spool itself. He moved the mechanical gear in relation to the inside of the hub of the spool. The housing stayed fixed. So that there were a lot of adaptations that had to be made to transfer the relative movement of the spool and the hub and fueling over to the invention that Moore had. But isn't that true every time you combine in prior art references that there has to be some modification? I mean, it's a rare thing that you can actually just take one feature and combine it without some other kind of modification, isn't it? It is, and that's why the court said in KSR that when you can't directly transfer one element from one invention to another, that it becomes a difficult question whether or not it's obvious. But to me, the way I read, for example, in Ray Ruffet, for example, it says in Ruffet that the patent office has to point to a specific technical principle or a particular teaching, a factual teaching, that would justify the transfer. I think levers are as old as Archimedes, and certainly what the court said in Ruffet is that all inventions are basically combinations of old elements. But in order to show that there's a motivation to combine, you have to show some factual basis that there was a technical principle that would teach the combination somewhere. As I say, in this particular case, there is nothing that the court can point to specifically, just general mechanical principles. It's a simple art, but then of course, if that's the case, every mechanical invention would be obvious and nothing would be patentable. We have a situation here, I think, where the one ordinary skill in the art is looking at feeling invention and looking at the more invention. It's not obvious how to put the two together. You have to do some work to figure it out, and that is invention. Now that's a pure factual question. Whether you call it analogous art or non-analogous art, it's just a verbal quibble. Why didn't you put in an affidavit saying that it wasn't obvious to do this? It would be nice to do so. Sometimes when you're representing the independent inventor, that can be hard to do as a practical matter. But on the other hand, we do not have the burden of proving that it's not obvious. The patent office has the burden of presenting a prime official case. We've got to review their fact findings for substantial evidence. I'm looking at the fact findings now. They say that Moore suggests that any suitable mechanism may be employed for the mechanical line feeder. Fueling discloses two such mechanical line feeding mechanisms. I understand your point is it's not enough to say anyone can be used and then fueling discloses one, but somebody actually has to fill in the blanks about how to incorporate it into the Moore invention, because it's not a matter of plucking it out of one and putting it into the other. Am I appreciating your argument? Well, my argument on that is that saying that any suitable line trimmer could be substituted is like asking someone to look for a needle in a haystack. It doesn't suggest any other possible structures that could be used besides his gear and the gears inside the hub. There have been a ton of cases from the circuit, including Enri Geiger, etc. that say that that's not sufficient to show. But Moore goes on to say the mechanical line feeding mechanism associated with the cutting head 14 is of any design which controls the rotation of the spool 72 within the head 14 to feed a predetermined length of cutting line from the head into the cutting plane as needed by the operator. Isn't that what fueling does? Isn't fueling have a line of exactly that design? Well, what Moore just described was function. But a function is not a teaching or a suggestion or a motivation of a particular structure. So why isn't it? If Moore is saying choose any mechanical line feeding mechanism that meets these functional requirements and if fueling is a piece of prior art, a well-known piece of prior art that discloses exactly such an animal, why isn't that enough? You agree, it doesn't have to be explicit. Moore doesn't have to say choose the fueling one. But Moore is saying choose any known mechanism that is capable of doing this and there's no dispute that fueling is prior art. So why isn't that enough? There's a difference between stating a problem, a result that's desired to be achieved, I think, and providing one of ordinary skill in the art with sufficient guidance as to what kind of structure would be appropriate to do so. There was no teaching in the prior art that a first-class lever could be used to cause relative movement between a spool and a housing. There was a teaching that a second-class lever could be used but there are difficulties in trying to mount that onto the type of structure that was involved in the Moore patent. What you're saying is that even if fueling had been a weed trimmer, there still would have been no motivation to combine. That's right, Your Honor, and if you look at Moore, what Moore did was he limited the application of his invention specifically to a handheld trimmer that had a broom on it with the prime mover at one end and the cutting head at the other. If the patent office position is correct, I mean, that that would have been obvious to use that in the fueling kind of situation, then why would Moore limit his application like that and limit his claims to Jetson claims? No, one of the things that... I'm sorry, go ahead. But that is another reason why I think one of ordinary skill looking at Moore, he looks at Moore and Moore is talking solely about the kind of trimmer that's handheld with a prime mover at one end and the cutting head at the other. You look at fueling, fueling is something that has a foot-operated pedal with a big lever underneath the deck. I think facially, I mean, one of ordinary skill is going to take one look at that and say, what's that got to do with trying to cause relative movement between a spool and a spool housing on a handheld trimmer? Simply as a factual matter. And so, that's why I think there is no motivation to combine references. I mean, without some kind of explicit teaching or suggestion or some kind of evidence that in any application that you want to talk about, leave line trimmers to the side that a foot-operated second-class lever is going to be some kind of a substitute for gears, they should have pointed to something that said that. Even if it wasn't in the field of line trimmers. Thank you. We'll start two minutes later. Mr. Johnson. May it please the court. Grace argues that there's no motivation to combine the references here in the record. However, the board provided substantial evidence to support their motivation finding. Fueling discloses a cutting line feeder, but it explicitly states that its cutting line feeder doesn't have to be used. Any cutting line feeder can be used in MORE in order to satisfy that particular device. One of ordinary school in the art reading that language would look to fueling because fueling teaches the exact requirements for MORE's cutting line feeder. So, one of ordinary school in the art would be led to substitute MORE's cutting line feeder with fueling's because fueling teaches the requirements for MORE's cutting line feeder. That's one of the findings made by the board with respect to motivation. Another is that fueling both teach the same problem. In the background section of both MORE and fueling, they described the problem of trying to design a cutting line feeder that extends cutting line selectively. Because both of those references teach the same problem, one of ordinary skill in the art naturally would have combined those two references in order to find a solution to the Isn't, doesn't that really go to analogous arts? Are you trying to collapse the analogous arts test into the motivation to combine test? Are you saying if it, if it is analogous arts and can be considered, therefore there is a motivation to combine? No, I'm not trying to collapse the two, Your Honor. I'm just trying to address the motivation findings made by the board. And here the board made two clear findings. One is that the prior references, which I just discussed, teach the motivation to combine. And two, the nature of the problem to be solved is the same in both. So that would have provided an additional motivation for the references to be combined. Yeah, but once you get into the problem to be solved, is there any stopping place? It's sort of mushy, isn't it? It's, I guess it can be mushy, Your Honor. But when one of ordinary skill in the arts sees two references that teach the same problem, naturally one of ordinary skill in the art would look to combine those two references to try to find an appropriate problem, solution to that particular problem. But again, it just makes it sound as though you're saying anytime two references talk about the same problem, we, that alone is automatically enough for them to be utilized to combine for an obviousness I'm not sure KSR goes that far. Well, I believe that KSR did address the fact that if two, if a problem is known in the art and there's a prior reference that addresses that problem, that would be sufficient reason for the references to be combined. And here that's just what we're dealing with. We're dealing with the problem and your definition is feeding outline without bumping it on the ground. That's correct, Your Honor. When you look at the specification, he states that a problem with the art is that cutting line feeders need to be bumped on the ground and that exposes the cutting line feeders to damage. And so the problem that Grace was dealing with is how do you design a cutting line feeder that extends cutting line without bumping it on the ground? And fueling addresses in its background section, the fact that handheld trimmers need to be bumped on the ground. So they address the same problem. And that is what would cause one of ordinary skill in the art to look to fueling to address the problem with which Grace was concerned. In addition to those two areas for motivation to combine, there's also the teachings in KSR. KSR states that whenever you combine known elements according to known methods, it's likely to be obvious when they happened. There were known elements that were combined, this actuation lever, and the cutting line feeder. The PTO has the burden of proof on this. So where is the PTO's evidence to support that idea? Is it the examiner's own knowledge functions as the evidence? Your Honor, you can look at the prior art themselves to see whether or not the result is predictable. And here, the cutting line feeder and the actuation lever, they didn't produce any unexpected results. There is no evidence in the record that shows that this combination produced an unexpected result. Wouldn't that put the burden on the patent applicant, though, if that were the standard? If the standard were somebody that we assume the prior art references produce a predictable result unless there's evidence that they don't. That's definitely further than KSR goes, I'm sure of that. Well, the initial burden is definitely on the PTO to establish a prima facie case. And then once that prima facie case is established by presenting the evidence that's in the record, then the burden does shift to the applicant. The applicant cannot sit on it. But that's why I'm wondering where's the PTO's evidence of this predictability of putting these two things together? What evidence is there that this all functioned in a predictable way known to one of skill in the art? Well, these references deal with gears and levers, and they've been known for generations. And so one of ordinary skill in the art... Don't you have to rely on the expertise of the examiner as being someone skilled in the art? I mean, it seems to me that's the nature of an ex parte examination as opposed to an exam. To an extent, that is true, Your Honor, because the examiner has an understanding of that particular field, and then he analyzes the references, and then he makes a prima facie case. If the applicant does not believe that the examiner's rationale for the rejection is sound, then he can rebut that. He can provide evidence in the form of an affidavit, which shows that the examiner got it wrong. What you're saying is the PTO doesn't need to when reviewing the application and his or her observation or conclusion that these two things would function in a predictable way is enough for the PTO to meet its burden? Yeah. When the PTO is established in its prima facie case, it does not need to bring in an expert, Your Honor. We're talking about to establish their prima facie case. The PTO, as part of their prima facie case, has to have argued something with regard to combining these things. That's correct. They look at the references that are out there, and then they present an argument. At that point, they've established the prima facie case. If the applicant is dissatisfied with that, then he can refute that by arguing his particular position, or he can submit evidence. Suppose we look at the references and we say on their face these references don't provide a showing of motivation that's necessary can come from the expertise of the examiner, because I understand this field. I understand the problem here. I think someone skilled in the art would have been motivated to combine. It's like expert testimony in the course of an infringement action where there's a validity issue. Your Honor, at the point at which the examiner... Is my statement accurate? I mean, doesn't the PTO have to rely on the expertise of the examiner and not just what's shown on the face of the references? Well, I believe that it's both, Your Honor. I'm not excluding the references themselves. Yes, that's correct, Your Honor. If the applicant does not agree, then the applicant cannot sit on its hands. It merely cannot wait until... If we're going to rely upon... I just want to think this through here. If we're going to be relying upon the PTO examiner's expertise as supplying the evidence related to motivation to combine when reading the references, don't we need some sort of qualification process to ensure that the examiner, in fact, has sufficient expertise to qualify as one of skill in the art in this area since motivation to combine and obviousness is all determined from the vantage point of one of skill in the art? Your Honor, I think that we're losing sight of the whole prosecution process where if the applicant does not agree with the examiner's findings with respect to the references and it doesn't agree with the rejection itself, then the onus is on the applicant. The applicant cannot idly sit by and wait until an appeal in order to make certain arguments. If he acquiesces to the examiner's finding, then implicit in that is that he agrees with the examiner's finding. But isn't your answer to Judge Brewer's question is we don't look at the qualifications of the examiner on a case-by-case basis. We assumed the examiner is someone skilled in the art. That's just the nature of the process. That's correct, Your Honor. It completely is a nature of the process. If we were to assume that the examiner was one of skill in the art, wouldn't that obviously be something that would be subject to rebuttal by the applicant? If he is an unskilled examiner in his particular case, wouldn't he be free if he did choose to object on that basis to using that particular examiner as one of skill in the art because he himself is clearly not qualified? And wouldn't that open that examiner's qualifications up to consideration by this court? I don't know that that is the analysis that the court would go through, Your Honor. This is certainly not where you expected to go today. I appreciate that. It wasn't brief. But you piqued our interest with this case because motivation to combine necessarily requires some sort of leap. And often in the litigations that we see that are litigations as opposed to PTO actions, there's always an expert explaining the leap from his considered one of skill in the art position showing how he would have taken this stuff in this reference and put it with this one because they both say X, Y, and Z, and they both lead to this. And it led me as one of skill in the art to this conclusion. And the interesting thing about the Patent Office Proceedings is you all never have these experts involved. And so we're looking at these references and we're wondering to ourselves, to what extent do we rely on the examiner as filling in that blank that we see so frequently provided in litigation cases? Well, I don't believe that it should be characterized as a leap, Your Honor, because the examiner is supposed to support his findings based upon the evidence. And if the court does not agree with the examiner's findings, then it can do so because it believes that the examiner did not support its case with substantial evidence. Your answer to Judge Moore's question has to be that agency expertise is assumed throughout administrative law and that you don't have hearings about whether the particular people involved in the agency are expert or not. It's just assumed. It's part of the assumption that courts have to make in reviewing administrative agencies that they are expert in the field. I would believe that's correct, Your Honor. Well, I'm going to let you go. I could keep this going. We've gone far enough on this road. Yeah, OK. Part of Grace's argument has been that the references cannot be physically combined, and so therefore, the combination should not have taken place. Grace's argument really loses sight of the true obviousness test. The obviousness test is not whether references can be physically combined. The test is whether the claimed invention would have been obvious to what of ordinary skill in the art in light of the teachings as a whole. And where Grace's argument really breaks down is that it loses sight of the fact of what of ordinary skill in the art would know how to modify references. And here, as mentioned, the references deal with gears and levers, and as conceded, they've been around for generations. So what of ordinary skill in the art here would know how to fit together the different teachings in the prior art until they operated properly. Just one last question. This is on actually and the necessity of bringing in Everett's. Is it all right if I turn you to that for one second? Yes, Your Honor. OK, because as I understand Everett's, it was the reference that was necessary vis-a-vis Claim 9 because it's the one that taught the proper number of these things, namely an equal number of flanges. Is that right? That's correct. OK. And what exactly can you explain to me was the motivation of combining Everett's other than, it's obviously advantageous because Everett shows that the equal number sort of reduce, what was it? There was some advantage that was actually disclosed in Everett's of using the equal number of them. Do you remember what it was? Yes. That is so that the force that's applied to the flanges would be spread. That is sufficient motivation to combine Everett's with the other references. OK, so whenever a reference talks about an advantage of doing it the way it proposes to do it, then is that enough motivation for one to utilize that reference? Yes, Your Honor. That would be the benefit that one of ordinary skill in the art would want to achieve when he combined that particular feature with the other references. So here, one of ordinary skill in the art wouldn't want to have combined Everett's with the other references so that you can minimize the amount of stress that was actually on the flanges themselves. As mentioned earlier, Your Honor, if Grace was dissatisfied or disagreed that the references could not be combined because they were in some way inoperable, Grace could have submitted an affidavit, but he didn't do so. So there is no evidence that one of ordinary skill in the art did not have the requisite knowledge to combine these references together. Just very briefly, first with regard to the discussion of the line trimmers in the prior art section of the fueling patent, the reason why fueling addressed those at all was because he was going to be using a flexible cutting line. That's all. The fact that is that with the particular problem that fueling was working on, he was working on a mower type thing. And the particular line feeders that were in the pump line trimmers and so forth weren't appropriate for what he was doing. That's why he came up with this thing with a foot pedal and a second class lever. Second, with regard to this business about the examiner being one of ordinary skill in the art, the office action did not contain any finding by the examiner that says I take notice of the fact from my experience that this is obvious to one of ordinary skill in the art. Therefore, there was no reason for us to submit an affidavit in rebuttal. The fact is that the examiner as one being skilled in the art is currently a myth. It may have been true 30, 40, 50 years ago when examiners spent a long time in their art units and built up a background, but we now have big turnover in examiners and we have examiners in art units that they have no background for, frankly. Third, with regard to the issue of what was said in KSR was a combination of known features by known methods would ordinarily be obvious if it produced predictable results and then later on they said the question is whether or not the result is unpredictable. In between, the Supreme Court discussed the United States versus Adams in which the Supreme Court found that the invention was not obvious because it was not predictable, but it was not, predictability was not based upon mechanical principles or scientific principles. What they were talking about was whether or not it would be predictable to one of ordinary skill in the art. Here we have no evidence that anybody had ever considered the combination that Mr. Grace came up with. Therefore, we have no evidence as to predictability at all. Your view would be that the examiner's statement that it would be predictable or his conclusion that it would be predictable and therefore there's a motivation to combine that that's not enough? That's not enough. What he's saying is that using the laws of mechanics and the laws of science, it should be predictable, but that's not the kind of predictability that the court was talking about in KSR. When I made this statement that something that performs the same function, a combination of features by known methods would be obvious if it produced predictable results. What he means is the results would be predictable in the opinion of those of ordinary skill in the art. Here we have no evidence that anybody of ordinary skill in the art had contemplated the particular combination that it's a non-factor. Okay, thank you, Mr. Lawrence.